UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED

NOV 18 2025

U.S. DISTRICT COURT
INDIANAPOLIS, INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Cause No. 1:25-cr-0700 TWP-KMK |
| v. | ) |
| | ) |
| AUSTIN GROSS | ) |
| a/k/a Mr. Shhhhh a/k/a Walter White | ) |
| a/k/a Borrowedtime_EK | ) |
| a/k/a bigaudiracks a/k/a Dutch a/k/a | ) |
| $johnnydang1212 a/k/a James Walker, | )                  -01 |
| JASON LEWIS a/k/a Fatboy | ) |
| a/k/a Don Pablo a/k/a $whiteboyyy10, | )                  -02 |
| ISAIAH WRIGHT a/k/a Zay | ) |
| a/k/a Zroy Overpaid, | )                  -03 |
| MAKAYLA HOCHSTETLER, | )                  -04 |
| JOSE SANCHEZ, | )                  -05 |
| RONTE MAJORS a/k/a Té, | )                  -06 |
| JACOB BOBBITT a/k/a JakeGTE, | )                  -07 |
| PHYLYDIA JACKSON a/k/a Jadebaby, | )                  -08 |
| NATHAN DONLAN a/k/a fifty.50__, | )                  -09 |
| JULIETTE GALLARDO ZAMORA, | )                  -10 |
| GAGE BUTLER, | )                  -11 |
| ALISHA SECREST, | )                  -12 |
| | ) |
| Defendants. | ) |

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges that:

1

## <u>COUNT ONE</u>
## 21 U.S.C. §§ 841(a)(1) and 846
## Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances

Beginning at a date unknown to the grand jury, but no later than on or about early 2023, and continuing up to and including in or about January 2025, in the Southern District of Indiana and elsewhere, AUSTIN GROSS a/k/a Mr. Shhhhh a/k/a Walter White a/k/a Borrowedtime_EK a/k/a bigaudiracks a/k/a Dutch a/k/a $johnnydang1212 a/k/a James Walker, JASON LEWIS a/k/a Fatboy a/k/a Don Pablo a/k/a $whiteboyyy10, ISAIAH WRIGHT a/k/a Zay a/k/a Zroy Overpaid, MAKAYLA HOCHSTETLER, JOSE SANCHEZ, RONTE MAJORS a/k/a Té, JACOB BOBBITT a/k/a JakeGTE, PHYLYDIA JACKSON a/k/a Jadebaby, NATHAN DONLAN a/k/a fifty.50_, and JULIETTE GALLARDO ZAMORA, defendants herein, did knowingly conspire together and with diverse other persons, known and unknown to the Grand Jury, to include Jaraughn Bertram, previously charged elsewhere, to possess with intent to distribute and to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

### *OBJECTS OF THE CONSPIRACY*

The charged conspiracy had one or more of the following objects:

1.    The distribution of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

2.    The distribution of 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide ("fentanyl"), a Schedule II, controlled substance.

3.    The distribution of 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

### MANNER AND MEANS

1.    AUSTIN GROSS (hereinafter, GROSS) was the leader of a drug trafficking organization that acquired methamphetamine, fentanyl, and cocaine for distribution in the Southern District of Indiana. GROSS coordinated this activity using cellular phones that he illegally acquired while he was incarcerated in the Bureau of Prisons, using the cellular phones to communicate with sources of supply, couriers, customers, and other conspirators.

2.    GROSS utilized multiple couriers, to include PHYLYDIA JACKSON and JACOB BOBBITT, to bring the controlled substances from the southwest border region to the Southern District Indiana.

3.    When couriers such as PHYLYDIA JACKSON and others would arrive in the Los Angeles, California area, individuals such as JULIETTE GALLARDO ZAMORA would coordinate the delivery of controlled substances to the couriers, and would also collect the U.S. Currency to pay for the controlled substances.

4.    Upon arriving in the Southern District of Indiana, GROSS directed other members of his organization, to include JASON LEWIS, to receive the controlled substances for further distribution to customers.

3

5. JASON LEWIS, ISAIAH WRIGHT, MAKAYLA HOCHSTETLER, and JOSE SANCHEZ were utilized to perform numerous acts in furtherance of the conspiracy, to include storing, counting, packaging, weighing, and selling controlled substances, and collecting, storing, and transporting drug proceeds.

6. The controlled substances obtained by the organization were further distributed by RONTE MAJORS and other individuals.

7. GROSS utilized multiple individuals to store his drug proceeds, to include NATHAN DONLAN.

8. The conspirators utilized cellular phones (including, but not limited to the use of the Signal, WhatsApp, and Instagram/Facebook Messenger internet-based applications and SMS text messaging) to coordinate the delivery of controlled substances and drug proceeds, as well as other activities of the conspiracy.

9. The conspirators also routinely carried firearms, to include machineguns, to protect themselves, their drugs, and their drug proceeds.

10. GROSS directed others to conduct acts of violence in furtherance of the conspiracy, in order to ensure that individuals aware of the organization were afraid to report the illegal activities to the police.

### OVERT ACTS

In furtherance of the conspiracy, the conspirators committed one or more of the following overt acts:

1. In late April 2023, GROSS tracked a parcel via the U.S. Postal Service's tracking tool, which parcel was mailed from Phoenix, Arizona to

4

Indianapolis, Indiana, and which contained approximately six kilograms of fentanyl pills.

2. On June 16, 2023, GROSS and one of GROSS's sources of supply, Conspirator #1, communicated over WhatsApp; in this communication, Conspirator #1 shared his new contact information with GROSS so that they could continue their drug trafficking activities.

3. On or about June 18, 2023, GROSS searched the internet for Southwest Airlines lost baggage customer service, and otherwise coordinated with Jaraughn Bertram to locate a suitcase containing $100,000 in cash, which a courier claimed had been lost by Southwest Airlines, but which GROSS and Bertram believed had been stolen by the courier.

4. On July 7, 2023, NATHAN DONLAN sent $1,500 in drug proceeds to GROSS through CashApp, an internet-based mobile payment application.

5. On or about January 8, 2024, GROSS and Nathan DONLAN communicated over Instagram Messenger; DONLAN advised, in cryptic language, that GROSS should have an unnamed female come to DONLAN to pick up drug proceeds, so that DONLAN would not have to bring the proceeds to another individual.

6. On or about January 30, 2024, GROSS and DONLAN communicated over Instagram Messenger to coordinate DONLAN's delivery of drug proceeds to GROSS's father.

7. On March 8, 2024, Conspirator #1 communicated with GROSS over WhatsApp, offering to sell GROSS 100,000 fentanyl pills at .40¢ per pill.

8. On March 15, 2024, GROSS and Jaraughn Bertram communicated over Snapchat; in this communication, GROSS instructed Bertram to have Bertram's drug proceeds prepared for delivery to GROSS's father, who would hold those proceeds for safekeeping.

9. On March 19, 2024, GROSS and Jaraughn Bertram communicated over Snapchat messages; in this communication, the two discussed how much a competitor was selling his fentanyl pills for, and GROSS indicated that he had learned the competitor's price was .70¢ per pill.

10. On March 25, 2024, GROSS and Jaraughn Bertram communicated over Snapchat; in this communication, GROSS indicated that GROSS's stepbrother was holding approximately $45,400 of Bertram's drug proceeds.

11. On March 26, 2024, GROSS communicated over WhatsApp with one of his sources of supply, Conspirator #1, to ask Conspirator #1 how much Conspirator #1 would charge for carfentanil, a fentanyl analogue and a controlled substance.

12. On April 2, 2024, GROSS communicated over WhatsApp with Conspirator #1, and asked for a photograph of the methamphetamine that Conspirator #1 was preparing to distribute to GROSS's organization.

13. On April 3, 2024, GROSS communicated over WhatsApp with Conspirator #1, and told Conspirator #1 that his courier would be in the Los Angeles, California area, and that he (GROSS) wanted to get the methamphetamine the next day, April 4, 2024, so that GROSS could have the methamphetamine back in Indianapolis, Indiana by Friday (April 5, 2024).

14.    On April 4, 2024, JACOB BOBBITT rented a room at the Crystal Palace Inn in Maywood, California, for the purpose of receiving methamphetamine on behalf of GROSS.

15.    On or about April 5, 2024, JACOB BOBBITT flew from Los Angeles, California to Indianapolis, Indiana, bringing the approximately forty pounds of methamphetamine that BOBBITT had received on GROSS's behalf from Los Angeles the day before.

16.    On April 5, 2024, GROSS communicated over WhatsApp with Conspirator #1 to inform Conspirator #1 that the approximately forty pounds of methamphetamine transported by BOBBITT had arrived in Indianapolis, Indiana; later that day, GROSS sent Conspirator #1 a photo of the methamphetamine that had been received, which GROSS found to be of inferior quality.

17.    Between April 6, 2024 and April 8, 2024, GROSS communicated over WhatsApp with Conspirator #1 and negotiated the price of methamphetamine from Conspirator #1 for future loads ($650 per pound of methamphetamine); GROSS also requested sixty pounds of methamphetamine for his drug trafficking organization, and an additional fifty to sixty pounds of methamphetamine for Jaraughn Bertram, provided the methamphetamine was high quality.

18.    On April 9, 2024, GROSS and Conspirator #1 communicated over WhatsApp, with Conspirator #1 sending GROSS a photograph of several

thousand fentanyl pills, and GROSS responding with a request for the price of those pills.

19.    As of April 12, 2024, GROSS and Jaraughn Bertram incorrectly believed that Spencer Lawson was providing information about the ongoing drug trafficking to law enforcement, and on that date, Bertram directed Spencer Lawson and Aaliyah Wortman to go to an Indianapolis, Indiana apartment complex parking lot to meet with an individual to pay off a $2,500 drug debt for past drugs received from the organization, and receive additional fentanyl at that location.

20.    On April 12, 2024, GROSS directed Malik Shaw to shoot and kill Spencer Lawson and Aaliyah Wortman in the Indianapolis parking lot, and directed Shaw to shoot the victims at least once in the head to ensure that the victims died, and were not just wounded.

21.    On April 12, 2024, acting at GROSS's direction, Malik Shaw and one other individual went to the Indianapolis parking lot. In the parking lot, they jointly shot and killed Spencer Lawson and Aaliyah Wortman, as well as London Coleman, who happened to be with Spencer Lawson and Aaliyah Wortman at the time.

22.    On April 30, 2024, GROSS and Conspirator #1 communicated over Signal, with GROSS sending Conspirator #1 a screenshot of flight information for GROSS's courier, PHYLYDIA JACKSON, who had an airline ticket to travel on April 29, 2024, from Indianapolis, Indiana to Los Angeles, California.

8

23.    On April 30, 2024, JULIETTE GALLARDO ZAMORA rented a room at the Crystal Palace Inn in Maywood, California, for the purpose of delivering methamphetamine to GROSS's courier, PHYLYDIA JACKSON.

24.    On April 30, 2024, GROSS used CashApp to send JULIETTE GALLARDO ZAMORA payment for the hotel room that ZAMORA had rented to enable PHYLYDIA JACKSON to obtain approximately sixty pounds of methamphetamine for GROSS.

25.    On April 30, 2024, PHYLYDIA JACKSON traveled to a hotel in the Los Angeles, California area and obtained sixty pounds of methamphetamine for GROSS.

26.    On May 1, 2024, PHYLYDIA JACKSON brought sixty pounds of methamphetamine back to Indianapolis, Indiana, and delivered the methamphetamine to JASON LEWIS for further distribution.

27.    On May 1, 2024, GROSS and Conspirator #1 communicated over Signal, with GROSS confirming that the methamphetamine had arrived in Indianapolis, Indiana.

28.    On May 6, 2024, GROSS and Conspirator #1 communicated over Signal, with GROSS relaying that Jaraughn Bertram wanted to purchase 300,000 fentanyl pills, and was willing to pay $90,000 for them.

29.    On May 7, 2024, GROSS used Signal to communicate with Conspirator #1; in this communication, GROSS sent Conspirator #1 a video displaying multiple bricks of cocaine. In this communication, GROSS also told Conspirator #1 that he (GROSS) had purchased the cocaine for $11,000 a

kilogram, and had also just sold the cocaine. In this communication thread of May 7, 2024, GROSS further asked Conspirator #1 the price at which Conspirator #1 would sell cocaine to GROSS.

30. On May 7, 2024, GROSS used Snapchat to communicate with an individual to offer to distribute methamphetamine to the individual.

31. On or about August 8, 2024, JASON LEWIS received a large number of fentanyl pills, which he further distributed.

32. On September 12, 2024, JOSE SANCHEZ sent a text message to JASON LEWIS, to inform LEWIS that he (SANCHEZ) was delivering controlled substances to one of LEWIS's customers.

33. On September 25, 2024, JOSE SANCHEZ and MAKAYLA HOCHSTETLER used an electronic money counter to count approximately $10,000 for JASON LEWIS.

34. On September 28, 2024, JASON LEWIS communicated over Signal with AUSTIN GROSS, with LEWIS telling GROSS that he (LEWIS) had just sold two pounds of methamphetamine for GROSS.

35. On or about September 29, 2024, RONTE MAJORS was given on consignment approximately 30,000 fentanyl pills by JASON LEWIS.

36. On October 7, 2024, JASON LEWIS and MAKAYLA HOCHSTETLER distributed ten pills of fentanyl to a customer, and then required the customer to ingest the pills while videotaping him, to show the source of supply the quality of fentanyl was poor.

37. In late October 2024, GROSS directed JASON LEWIS to fly from Indianapolis, Indiana to Los Angeles, California, and deliver approximately $50,000 in drug proceeds to a source of supply.

38. On October 31, 2024, JASON LEWIS, MAKAYLA HOCHSTETLER, and ISAIAH WRIGHT were in a vehicle traveling to the Indianapolis International Airport, so that LEWIS could fly to Los Angeles, California and deliver approximately $50,000 to one of GROSS's sources of supply.

39. On December 3, 2024, ISAIAH WRIGHT communicated with a drug customer over Facebook Messenger, offering to sell the customer 1,000 fentanyl pills for $1,000.

40. On December 12, 2024, ISAIAH WRIGHT communicated with a drug customer over Facebook Messenger, giving the customer JASON LEWIS's CashApp as the means by which she could pay for drugs she wanted.

41. On January 3, 2025, JASON LEWIS and MAKAYLA HOCHSTETLER communicated over text message to ensure that their fentanyl customers were supplied with fentanyl.

42. On January 9, 2025, MAKAYLA HOCHSTETLER sent a text message over a cellular phone to offer additional fentanyl to a drug customer.

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO
## 21 U.S.C. §§ 848(a), (b), (e)
### Continuing Criminal Enterprise

From on or about early 2023 through and including January 2025, in the Southern District of Indiana and elsewhere, AUSTIN GROSS a/k/a Mr. Shhhhh a/k/a Walter White a/k/a Borrowedtime_EK a/k/a bigaudiracks a/k/a Dutch a/k/a $johnnydang1212 a/k/a James Walker, did unlawfully, knowingly and intentionally engage in a continuing criminal enterprise in that he unlawfully, knowingly and intentionally violated Title 21, United States Code, Sections 841, 843, 848(b)(1)-(2)(A), and 848(e)(1)(A), which violations include, but are not limited to:

(1)   the substantive violations alleged in Count One (Controlled Substance Conspiracy) (to include, but not limited to, the substantive violations alleged in Overt Acts 12, 13, 17, 18, 19, 20, 22, 25, 27, 28, 29, and 36; and

(2)   the substantive violations alleged in Count Eight and Count Nine; which Overt Acts and Counts are realleged and incorporated by reference as though fully set forth in this Count, and which violations were part of a continuing series of violations of the Controlled Substances Act, Title 21, United States Code, Section 801, *et seq.*, undertaken by defendant AUSTIN GROSS, in concert with at least five other persons with respect to whom AUSTIN GROSS occupied position of organizer, supervisor, and any position of management, and from which such continuing series of violations the defendant obtained substantial income and resources.

12

Furthermore, the defendant AUSTIN GROSS was a principal administrator, organizer, supervisor and leader of the criminal enterprise, which involved the distribution of:

(1)    mixtures and substances containing a detectable amount of methamphetamine, a Schedule II controlled substance, and the amount of said mixtures and substances of methamphetamine was at least fifteen kilograms; and/or

(2)    mixtures and substances containing a detectable amount of fentanyl, a Schedule II controlled substance, and the amount of said mixtures and substances of fentanyl was at least twelve kilograms.

Furthermore, while engaging in or working in furtherance of the continuing criminal enterprise, the defendant AUSTIN GROSS commanded, induced, procured, or caused the intentional killing of one or more individuals who were believed to be cooperating with law enforcement, and the actual killing of one or more individuals resulted, as alleged in Overt Acts 19, 20, and 21 of Count One.

All in violation of Title 21, United States Code, Sections 848(a), (b), and (e).

## COUNT THREE
### 18 U.S.C. §§ 1512(a)(1)(C) and 2
### Tampering with a Witness

Overt Acts 19, 20, and 21 of Count One are realleged as if set forth herein.

On or about April 12, 2024, in the Southern District of Indiana and elsewhere, the defendant AUSTIN GROSS a/k/a Mr. Shhhhh a/k/a Walter White

13

a/k/a Borrowedtime_EK a/k/a bigaudiracks a/k/a Dutch a/k/a $johnnydang1212 a/k/a James Walker, did aid and abet the killing of Spencer Lawson with the intent to prevent Spencer Lawson from communicating information relating to the commission and possible commission of one or more Federal offenses to a law enforcement officer of the United States, in that defendant AUSTIN GROSS aided, abetted, counseled, induced, or procured another person to shoot Spencer Lawson to death in the Southern District of Indiana, in violation of Title 18, United States Code, Section 1512(a)(1)(C) and Title 18, United States Code, Section 2.

## COUNTS FOUR THROUGH SIX
### 18 U.S.C. §§ 924(c)(1)(A)(iii) and (j)(1)
### Causing Death by Using a Firearm During and in Relation to a Crime of Violence

On or about April 12, 2024, within the Southern District of Indiana, the defendant AUSTIN GROSS a/k/a Mr. Shhhhh a/k/a Walter White a/k/a Borrowedtime_EK a/k/a bigaudiracks a/k/a Dutch a/k/a $johnnydang1212 a/k/a James Walker, did knowingly aid, abet, and procure the use and discharge of a firearm during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii), and in the course of this violation caused the death of multiple persons through the use of a firearm, each person being a separate count of this Indictment, as set forth in the table below, and the killing constituted first-degree murder (namely, a willful, deliberate, malicious, and premeditated killing), as defined in Title 18, United States Code, Section 1111(a);

14

to wit, GROSS caused the use and discharge of a firearm during and in relation to the crime charged in Count Three of the Indictment, which caused the murder of the individuals specified in the table below, in one or more of the following ways:

1.    On April 12, 2024, AUSTIN GROSS and Jaraughn Bertram communicated in order to bring Spencer Lawson and Aaliyah Wortman to the same location in Indianapolis, Indiana as Malik Shaw and an associate of Shaw's, which individuals had been contracted to shoot Lawson and Wortman to death.

2.    On April 12, 2024, GROSS contacted Malik Shaw over their respective Signal accounts, and requested, and then received, Malik Shaw's location, so that GROSS could coordinate with Jaraughn Bertram to get the victims to travel to the same location.

3.    On April 12, 2024, GROSS instructed Malik Shaw over Signal to make sure Shaw chose a location to kill the victims where there were no surveillance cameras.

4.    On April 12, 2024, GROSS utilized Signal to direct Malik Shaw to not wear a mask when meeting Spencer Lawson, because that would cause the victims to leave before Malik Shaw and Shaw's associate could kill the victims.

5.    On April 12, 2024, GROSS utilized Signal to send Malik Shaw a photograph of victim Spencer Lawson.

6.    On April 12, 2024, GROSS instructed Malik Shaw over Signal to make sure that each victim was shot at least one time in the head, to ensure that the victims died and were not merely injured.

7.    On April 12, 2024, GROSS instructed Malik Shaw over Signal to tell his (Shaw's) associate to also start shooting once Shaw began shooting the victims.

8.    At approximately 7:00 p.m. E.S.T. on April 12, 2024, GROSS informed Malik Shaw over Signal that the victims had arrived at the prearranged location in Indianapolis where the victims were to be killed by Shaw and Shaw's associate.

The victims of Counts Four through Six are described as follows:

| COUNT FOUR | Victim Spencer Lawson |
| COUNT FIVE | Victim Aaliyah Wortman |
| COUNT SIX | Victim London Coleman |

All in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and (j)(1) and Title 18, United States Code, Section 2.

## COUNT SEVEN
### 18 U.S.C. § 1956(h)
### Conspiracy to Launder Monetary Instruments

From in or about early February 2023 through July 9, 2025, the exact dates being unknown to the Grand Jury, in the Southern District of Indiana and elsewhere, AUSTIN GROSS a/k/a Mr. Shhhhh a/k/a Walter White a/k/a

Borrowedtime_EK a/k/a bigaudiracks a/k/a Dutch a/k/a $johnnydang1212 a/k/a James Walker, JACOB BOBBITT a/k/a JakeGTE, GAGE BUTLER, and ALISHA SECREST, defendants herein, did knowingly conspire with diverse persons known and unknown to the Grand Jury to knowingly and intentionally conduct and attempt to conduct financial transactions, knowing that the property involved in the financial transactions represented, in whole or in part, the proceeds of a specified unlawful activity (that is, distribution of controlled substances), and knowing that the transactions were designed, in whole or in part, to conceal or disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity; all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and (h).

## COUNT EIGHT
### 21 U.S.C. § 843(b)
### Use of Communication Facility to Facilitate a Drug Trafficking Felony

On or about January 30, 2024, in the Southern District of Indiana, defendants AUSTIN GROSS a/k/a Mr. Shhhhh a/k/a Walter White a/k/a Borrowedtime_EK a/k/a bigaudiracks a/k/a Dutch a/k/a $johnnydang1212 a/k/a James Walker and NATHAN DONLAN a/k/a fifty.50_ did knowingly and intentionally use any communication facility, to wit: cellular phones (using Instagram Messenger), to facilitate the commission of any act or acts constituting a felony under Title 21, United States Code, Sections 841 and 846, that is, the offense set forth in Count One of this indictment, incorporated by reference herein.

17

All in violation of Title 21, United States Code, Section 843(b).

## COUNT NINE
## 21 U.S.C. § 843(b)
## Use of Communication Facility to Facilitate a Drug Trafficking Felony

On or about April 30, 2024, in the Southern District of Indiana, the defendants AUSTIN GROSS a/k/a Mr. Shhhhh a/k/a Walter White a/k/a Borrowedtime_EK a/k/a bigaudiracks a/k/a Dutch a/k/a $johnnydang1212 a/k/a James Walker and PHYLYDIA JACKSON a/k/a Jadebaby did knowingly and intentionally use any communication facility, to wit: cellular phones (using Instagram Messenger), in facilitating the commission of any act or acts constituting a felony under Title 21, United States Code, Sections 841 and 846, that is, the offense set forth in Count One of this indictment, incorporated by reference herein.

All in violation of Title 21, United States Code, Section 843(b).

## NOTICE OF SPECIAL FINDINGS – AUSTIN GROSS

The allegations in this Indictment are hereby re-alleged and incorporated herein by reference as if fully set forth.

## Special Findings: Prior Criminal History

The grand jury further alleges that:

Before AUSTIN GROSS, defendant herein, committed the offenses charged in Count One and Count Two, AUSTIN GROSS had sustained a final conviction

18

for a serious drug felony, namely, a conviction for Conspiracy to Possess with the Intent to Distribute and/or Distribute Delta-9 Tetrahydrocannabinol (THC), a felony, in the Southern District of Indiana, Cause Number 1:20-cr-00093 TWP-TAB, for which he served more than 12 months imprisonment, and for which he is currently serving a term of imprisonment (and therefore was not released from imprisonment more than 15 years prior to the commencement of the instant offenses charged in Count One and Count Two).

### Special Findings: Title 18, United States Code, Sections 3591 and 3592

The Grand Jury further finds:

Pursuant to the provisions of Title 18, United States Code, Sections 3591 and 3592, the following factors exist regarding defendant AUSTIN GROSS's commission of the offenses set forth in Count Two, Count Three, Count Four, Count Five, and Count Six of the indictment, respectively, and the allegations of these Counts are realleged as if fully set forth herein:

### A.    Statutory Factors Enumerated Under Title 18 U.S.C. § 3591

1.    AUSTIN GROSS was 18 years of age or older at the time he committed the offenses in the indictment. [18 U.S.C. § 3591(a)];

2.    AUSTIN GROSS intentionally participated in an act, contemplating that the life of a person, Spencer Lawson, would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act. [18 U.S.C. § 3591(a)(2)(C)];

19

3.    AUSTIN GROSS intentionally participated in an act, contemplating that the life of a person, Aaliya Wortman, would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act. [18 U.S.C. § 3591(a)(2)(C)];

4.    The defendant AUSTIN GROSS has been charged with an offense referred to in section 408(c)(1) of the Controlled Substances Act (21 U.S.C. 848(c)(1)), committed as part of a continuing criminal enterprise offense under the conditions described in subsection (b) of that section which involved not less than twice the quantity of controlled substance described in subsection (b)(2)(A). [18 U.S.C. § 3591(b)(1)];

5.    The defendant AUSTIN GROSS has been charged with an offense an offense referred to in section 408(c)(1) of the Controlled Substances Act (21 U.S.C. 848(c)(1)), committed as part of a continuing criminal enterprise offense under that section, where the defendant is a principal administrator, organizer, or leader of such an enterprise, and the defendant, in order to obstruct the investigation or prosecution of the enterprise or an offense involved in the enterprise, knowingly directs, advises, authorizes, or assists another to attempt to kill any witness. [18 U.S.C. § 3591(b)(2)].

### B.    Statutory Factors Enumerated Under Title 18, United States Code, Section 3592(c)

1.    The defendant AUSTIN GROSS, in the commission of the offense and/or in escaping apprehension for the violation of the offense, knowingly

created a grave risk of death to one or more persons in addition to the victim of the offense. [18 U.S.C. § 3592(c)(5)].

2.    The defendant AUSTIN GROSS committed the offense after substantial planning and premeditation to cause the death of a person.    [18 U.S.C. § 3592(c)(9)];

3.    The defendant AUSTIN GROSS had previously been convicted of violating Title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of five or more years may be imposed. [18 U.S.C. § 3592(c)(12)];

4.    The defendant AUSTIN GROSS intentionally caused the killing of more than one person in a single criminal episode. [18 U.S.C. § 3592(c)(16)].

**C.    Statutory Factors Enumerated Under Title 18, United States Code, Section 3592(d)**

1.    The defendant AUSTIN GROSS had previously been convicted of another Federal or State offense involving the manufacture, distribution, importation, or possession of a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)) for which a sentence of five or more years of imprisonment was authorized by statute. [18 U.S.C. § 3592(d)(3)];

2.    In committing the offenses charged in Counts Two, Four, Five and Six of the Indictment, the defendant AUSTIN GROSS knowingly directed, advised, authorized, or assisted another to use a firearm to threaten, intimidate, assault, or injure a person. [18 U.S.C. § 3592(d)(4)].

21

# FORFEITURE

1.      The allegations contained in Counts 1, 2, 8 and 9 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853.

2.      Pursuant to Title 21, United States Code, Section 853, upon conviction of an offense in violation of Title 21, United States Code, Sections 841, 848, and 843, AUSTIN GROSS a/k/a Mr. Shhhhh a/k/a Walter White a/k/a Borrowedtime_EK a/k/a bigaudiracks a/k/a Dutch, JASON LEWIS a/k/a Fatboy a/k/a Don Pablo, ISAIAH WRIGHT a/k/a Zay a/k/a Zroy Overpaid, MAKAYLA HOCHSTETLER, JOSE SANCHEZ, RONTE MAJORS a/k/a Té, JACOB BOBBITT a/k/a JakeGTE, PHYLYDIA JACKSON a/k/a Jadebaby, and NATHAN DONLAN a/k/a fifty.50_, defendants herein, shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such offenses and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the offenses.

3.      The allegations contained in Count 3 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

4.      Upon conviction of the offense in violation of Title 18, United States Code, Section 1512 set forth in Count 3 of this Indictment, defendant AUSTIN GROSS a/k/a Mr. Shhhhh a/k/a Walter White a/k/a Borrowedtime_EK a/k/a

22

bigaudiracks a/k/a Dutch, the defendant herein, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

5.     The allegations contained in Counts 4, 5 and 6 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c).

6.     Upon conviction of the offenses in violation of Title 18, United States Code, Section 924 set forth in Counts 5 and 6 of this Indictment, AUSTIN GROSS a/k/a Mr. Shhhhh a/k/a Walter White a/k/a Borrowedtime_EK a/k/a bigaudiracks a/k/a Dutch, the defendant herein, shall forfeit to the United States pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), any firearms and ammunition involved in the commission of the offenses.

7.     The allegations contained in Count 7 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1).

8.     Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, Section 1956, AUSTIN GROSS a/k/a Mr. Shhhhh a/k/a Walter White a/k/a Borrowedtime_EK a/k/a bigaudiracks a/k/a Dutch, JACOB BOBBITT a/k/a JakeGTE, GAGE BUTLER, and ALISHA SECREST, defendants herein, shall forfeit to the United

States of America any property, real or personal, involved in such offense, and any property traceable to such property.

9.     Further, upon conviction, the United States will seek an order of forfeiture in the form of a money judgment, representing the amount of proceeds the defendants obtained from the offenses of conviction.

10.     If any of the property described above, as a result of any act or omission of the defendants:

  a.   cannot be located upon the exercise of due diligence;
  b.   has been transferred or sold to, or deposited with, a third party;
  c.   has been placed beyond the jurisdiction of the court;
  d.   has been substantially diminished in value; or
  e.   has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

███████████████████████
FOREPERSON

THOMAS E. WHEELER II
United States Attorney

By:  *M. P. Brady*
Michelle P. Brady
Brendan Sullivan
Assistant United States Attorneys

24